******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE LILYANA L. ET AL.*
(AC 41451)

Sheldon, Moll and Mihalakos, Js.

*Syllabus*

The respondent mother appealed to this court from the judgment of the
trial court terminating her parental rights with respect to her minor
child, L. The trial court also terminated the mother's parental rights
with respect to her minor child A, but the mother did not appeal from
that judgment. The court had determined, pursuant to statute (§ 17a-
112 [j] [3] [F]), that the mother had committed an assault of A, through
a deliberate, nonaccidental act that resulted in serious bodily injury to
A. The court found that on the day of the incident at issue, the mother,
who was A's primary caretaker, had noted bruises on A's head before
she left for work. About one hour later, A's father, W, who was watching
A, called 911 and stated, inter alia, that A was not breathing and could
not move her legs. W told the police that he had left A on a bed and
went to use a bathroom, and then found A on the floor when he returned.
The mother told the police that W could have caused A's injuries. The
court determined that the mother could not be excluded as the source
of certain of A's injuries and that the mother was in close physical
proximity to A when A sustained the injuries. On appeal, the mother
claimed that the trial court improperly applied § 17a-112 (j) (3) (F) in
terminating her parental rights and that because the court was unable
to determine whether she or W was responsible for A's injuries, the
evidence was insufficient for the court to have found that she committed
a deliberate, nonaccidental assault that resulted in the injury of A. *Held*
that the trial court properly terminated the mother's parental rights as
to L, as that court properly applied the law, and its legal conclusion
that the elements of § 17a-112 (j) (3) (F) were established was supported
by clear and convincing evidence; that court found that the mother and
W had engaged in a course of conduct that made them both the direct
cause of A's injuries, and the evidence was sufficient to establish that
the mother committed a deliberate, nonaccidental assault on A, as there
was extensive evidence on which the court could have based its finding
that the mother was not just a party who simply stood by and watched
A suffer serious injuries, but that she was an active participant with
regard to those injuries, and evidence demonstrating that the mother
had once thrown A onto a couch comported with credible medical
testimony and certain other evidence, which showed that the incident
at issue on which the termination petition was based was not the only
time that A had been abused.

Argued September 11—officially released November 7, 2018**

*Procedural History*

Coterminous petitions by the Commissioner of Children and Families to adjudicate the respondents' minor children neglected and to terminate the respondents' parental rights with respect to their minor children, brought to the Superior Court in the judicial district of Fairfield, Juvenile Matters at Bridgeport, and tried to the court, *Ginocchio, J.*; thereafter, the court amended the petition to terminate the parental rights of the respondent mother as to the minor child Lilyana L.; judgments adjudicating the minor children neglected and terminating the respondents' parental rights, from which the respondent mother appealed to this court. *Affirmed.*

*Karen Oliver Damboise*, assigned counsel, for the

appellant (respondent mother).

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon* and *Mildred Bauza*, assistant attorneys general, for the appellee (petitioner).

*Rebecca A. Rebollo*, for the minor child.

*Opinion*

MIHALAKOS, J. The respondent, Britney N., appeals from the judgment of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families, terminating her parental rights with respect to her minor child, Lilyana L.[1] On appeal, the respondent claims that the trial court erred when it determined, pursuant to General Statutes § 17a-112 (j) (3) (F), that the respondent committed an assault, through a deliberate, nonaccidental act that resulted in serious bodily injury to another child of the parent.[2] We affirm the judgment of the trial court.

The facts of this case involve the termination of the respondent's parental rights as to her daughter, Lilyana, which was based on the respondent's abuse of another child, Avah L. The following facts and procedural history are relevant to this appeal. This appeal arises from coterminous neglect and termination of parental rights petitions filed with respect to the respondent's minor children, Lilyana (born in May, 2015) and Avah (born in March, 2016).[3] On October 21, 2016, the petitioner filed petitions for the termination of the respondent's parental rights as to Avah[4] and Lilyana. The termination petition as to Lilyana alleged, pursuant to § 17a-112 (j) (3) (F), that the respondent committed an assault, through a deliberate, nonaccidental act, that resulted in the serious bodily injury of another child of the parent.

Until October 7, 2016, the children resided with the respondent and Avah's father, William L., in an apartment on the second floor of a three-family house. The respondent and William were the children's primary caretakers, although outside health care professionals came to the apartment on a regular basis to help with the care of Avah, who suffered from small gestational age, acid reflux, and torticollis.

The petitioner filed the underlying petition following Avah's hospitalization on October 14, 2016. In its memorandum of decision, the trial court found the following facts regarding the events that transpired on that date: "[A]t approximately 5:40 p.m., police and emergency personnel responded to a 911 call . . . . The caller, who was [Avah's] father, [William], stated that he needed help, his baby was not breathing. Those who initially arrived at the scene described the infant, [Avah], as being nonreactive and nonresponsive. Her body was limp, and she was not able to move her arms or legs. . . . The child was taken to a nearby hospital. [Officer Mark Blackwell of the Bridgeport Police Department] spoke to the baby's father, [William], and asked [him] what happened. [William] responded that he was watching the baby after her mother, [the respondent], had left for work. He stated that he had to use the bathroom and, while in the bathroom, he left the baby on the bed in their bedroom. When he returned

he found the baby, lying on her back, on the floor. He proceeded to call for help."

At Yale New Haven Children's Hospital, doctors diagnosed Avah with a head trauma, which resulted in a subdural hemorrhage and retinal hemorrhages. Avah also had three leg fractures, which included two healing fractures and one acute fracture, and facial bruising. Three days after her admission to the hospital, Avah experienced seizures related to her head injury. Lisa R. Pavlovic, a pediatrician and child abuse specialist at Yale New Haven Children's Hospital, examined Avah after she was admitted to the hospital. The trial court credited Pavlovic's opinion "that Avah's injuries [were] due to severe physical abuse" and that "more than one episode of abuse took place."

On October 17, 2016, the petitioner invoked a ninety-six hour hold on behalf of Avah and Lilyana. See General Statutes § 17a-101g (f). On October 21, 2016, the petitioner filed ex parte motions for orders of temporary custody and neglect petitions on behalf of the children. On the same day, the court granted the petitioner's ex parte motions on the basis of its findings that the children were in immediate physical danger from their surroundings and that their continuing to remain in the home was contrary to the welfare of the minor children, and vested temporary custody of the children in the petitioner.

Christopher Loesche, an investigator from the Department of Children and Families, testified on behalf of the petitioner at trial. Loesche interviewed the respondent on October 14, 2016, while Avah was in the pediatric intensive care unit. The respondent told Loesche that she had noticed bruises on Avah during the last few months and that she believed the bruising was due to Nexium, a medication Avah was prescribed for acid reflux. The respondent also speculated that Avah's bruising could have been caused by the child hitting her face against plastic toys attached to a swing in which she sometimes sat. The respondent told Loesche that she had reported Avah's bruising to Michelle Macchio, a visiting nurse who came to the apartment regularly, and that Macchio had consulted with Avah's pediatrician about the injuries.

Macchio, who treated Avah from April to October, 2016, testified about the bruising Avah experienced prior to her hospitalization. On October 3, 2016, Macchio observed a bruise on the top inner part of Avah's ear and the respondent informed her that Avah had a nosebleed. On October 6, 2016, the respondent sent Macchio a photograph of Avah with substantial bruising on her face. Macchio said the bruising could be a rare side effect of Nexium, but that she had "never seen anything like that . . . ." Concerned because of Avah's bruising, Macchio called Avah's pediatrician and scheduled an appointment for Avah the next morning. The

respondent told Macchio that she had attended the appointment and that the doctor told her to discontinue the Nexium. Later, Macchio discovered that the respondent had not attended the appointment.

Detective Albert Palatiello of the Bridgeport Police Department testified on behalf of the petitioner about interviews he conducted with the respondent on October 24 and November 10, 2016. During the October 24 interview, the respondent said that she believed William could have caused Avah's injuries. She also told Palatiello that she believed Avah's injuries could have been caused by the Nexium and the toys attached to Avah's swing. During the November 10 interview, the respondent told Palatiello that she and William had been involved in one domestic violence incident in the past, and that William smoked marijuana on a daily basis and had used heroin. The respondent described an incident in which Avah was crying and William yelled something to the effect of "will you shut the baby . . . up . . . ." The respondent also spoke of a time when William helped Avah blow her nose and, afterward, the respondent noticed that Avah's nose was bright red, which she thought was strange.

The court also heard testimony at trial from medical professionals who treated Avah or were familiar with her medical record. Six physicians, all of whom treated Avah at the time of her injuries or shortly thereafter, testified on behalf of the petitioner.[5] These witnesses provided substantial evidence that Avah's injuries were nonaccidental. Two physicians testified on behalf of the respondent: Joseph M. Scheller, a board certified pediatrician and child neurologist, and Jack Levenbrown, an expert in pediatric radiology. Scheller and Levenbrown testified that, based on Avah's medical records, her injuries were accidental or the result of a preexisting medical condition. The court found Scheller and Levenbrown's testimony unpersuasive[6] and after "carefully review[ing] and assess[ing] all the medical testimony presented during the trial . . . conclude[d] . . . that Avah was the victim of child abuse."

The court also heard testimony from those acquainted with the respondent and William, including their landlord, Allen Brooks, and Brooks' daughter. The court credited Brooks' testimony that the respondent and William were using drugs, and that Brooks constantly smelled marijuana in the hallway. Brooks also testified that he was concerned that the respondent and William were selling drugs from their apartment. Brooks' daughter testified that the respondent and William fought constantly, and that both could be aggressive at times. She also testified that, during the week before Avah's hospitalization, there were three consecutive nights that she heard Avah cry so hard that she thought the baby might hurt herself.

On November 15, 2017, after the close of evidence,

the court, on its own motion, pursuant to Practice Book § 34a-1 (d), sought to amend the respondent's termination petition to include § 17a-112 (j) (3) (C) as a ground for termination as to Lilyana. The respondent objected to the motion and was given an opportunity to be heard on the issue. Ultimately, the court overruled the respondent's objection and amended the petition.

The court issued a thorough and thoughtful memorandum of decision on February 1, 2018, in which it found that the petitioner had proved, by clear and convincing evidence, grounds (C) and (F) of § 17a-112 (j) (3) as to Lilyana and ground (C) as to Avah. The trial court, therefore, terminated the respondent's parental rights as to Lilyana and Avah. The respondent appealed from the decision as to Lilyana only. Additional facts and procedural history will be set forth as necessary.

The respondent's first claim on appeal is that the trial court erred when it terminated her parental rights pursuant to § 17a-112 (j) (3) (F). Specifically, the respondent argues that the trial court improperly applied ground (F) and, alternatively, that there was insufficient evidence for the court to find, pursuant to that ground, that she committed a deliberate, nonaccidental assault that resulted in the injury of Avah. We disagree.

We begin by setting forth the applicable standards of review. "Although the trial court's subordinate factual findings are reviewable only for clear error, the court's ultimate conclusion that a ground for termination of parental rights has been proven presents a question of evidentiary sufficiency. . . . That conclusion is drawn from both the court's factual findings and its weighing of the facts in considering whether the statutory ground has been satisfied. . . . On review, we must determine whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court. . . . To the extent we are required to construe the terms of § 17a-112 (j) (3) [(F)] or its applicability to the facts of this case, however, our review is plenary." (Citations omitted; internal quotation marks omitted.) *In re Egypt E.*, 327 Conn. 506, 525–26, 175 A.3d 21, cert. denied sub nom. *Morsy E.* v. *Commissioner of Children & Families* (U.S. October 1, 2018) (No. 17-1549).

"Proceedings to terminate parental rights are governed by § 17a-112. . . . Under [that provision], a hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more of the . . . grounds for termination of parental rights set forth in

§ 17a-112 [(j) (3)] exists by clear and convincing evidence. The [petitioner] . . . in petitioning to terminate those rights, must allege and prove one or more of the statutory grounds." (Citation omitted; internal quotation marks omitted.) Id., 526.

One such statutory ground is set forth in § 17a-112 (j) (3) (F), which provides that a trial court may grant a petition for termination of parental rights if it finds by clear and convincing evidence that "the parent has killed through deliberate, nonaccidental act another child of the parent or has requested, commanded, importuned, attempted, conspired or solicited such killing or has committed an assault, through deliberate, nonaccidental act that resulted in serious bodily injury of another child of the parent . . . ."

The trial court terminated the respondent's parental rights as to Lilyana pursuant to § 17a-112 (j) (3) (F). The respondent first argues that the trial court could not have found that she committed a deliberate, nonaccidental assault on Avah because it was unable to determine whether she or William was responsible for Avah's injuries. This argument hinges on the trial court's statement that the respondent "[could not] be excluded as the source of any of the other injuries Avah sustained." The respondent cites *In re Brianna T.*, Superior Court, judicial district of Middlesex, Child Protection Session at Middletown, Docket Nos. U06-CP-05-005012A, U06-CP-05-005015A, U06-CP-05-005013A and U06-CP-05-005014A, 2009 WL 659196 (February 10, 2009), and *In re Egypt E.*, Superior Court, judicial district of Middlesex, Child Protection Session at Middletown, Docket Nos. H14-CP-13-010981A and H14-CP-13-010982A, 2015 WL 4005340 (June 1, 2015), rev'd, *In re Egypt E.*, 322 Conn. 231, 140 A.3d 210 (2016), in support of the proposition that § 17a-112 (j) (3) (F) cannot be satisfied when the court is unable to determine which of two parents abused a child. In *In re Brianna T.*, supra, 2009 WL 659196, *22, the court was unable to "determine from the evidence which of the two [parents] inflicted the fatal blow to [the child's] head" and, therefore, declined to find that the child's father killed her through a deliberate, nonaccidental act. In *In re Egypt E.*, supra, 2015 WL 4005340, *18, the trial court found that § 17a-112 (j) (3) (F) was not satisfied as to the father because "clear and convincing evidence on the issue of the identity of the perpetrator [was] lacking." These cases, however, are distinguishable from the present case. In *both In re Brianna T.* and *In re Egypt E.*, the trial court was unable to determine whether one of two parents had any role in the child's abuse. In contrast, the court in the present case found that "[the respondent] and [William] . . . engaged in a course of conduct that makes them both the direct cause for Avah's serious bodily injuries."

The respondent argues that even if the trial court

did not misinterpret § 17a-112 (j) (3) (F), there was insufficient evidence to establish that she committed a deliberate, nonaccidental assault on Avah. The trial court heard extensive evidence on which it based its finding that the respondent "was not just a party who simply stood by and watched her infant suffer serious injuries, but, rather, she was an active participant with regard to those injuries." The trial court relied on the following evidence in support of its determination that the respondent participated in Avah's abuse: "[The respondent's] deceptive behavior, coupled with the fact that there was medical testimony that the bruising on Avah's face was consistent with a slap mark made by a hand similar in size to that of [the respondent] . . . ." In addition to this evidence, the trial court heard a recording from a phone conversation William had with his sister, during which he said that the respondent once threw Avah onto a couch.[7] This evidence comports with credible medical testimony and other evidence that October 14, 2016, was not the only time that Avah was abused.

Moreover, the trial court was not convinced that the respondent was wholly uninvolved in the October 14, 2016 episode, stating: "[T]he court is troubled by the testimony that when [the respondent] left for work that day, she noted bruises on Avah's cheeks in the morning and a bruise on her forehead right before she left for work in the early evening. Within an hour the child was rushed to the hospital. There was testimony that [the respondent] was the primary caregiver for Avah. She was in close physical proximity to Avah when she sustained her serious physical injuries."

On the basis of the foregoing, we conclude that the trial court properly applied the law, and that its legal conclusion that the petitioner established the elements of § 17a-112 (j) (3) (F) is supported by clear and convincing evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** November 7, 2018, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The respondent's parental rights were also terminated as to her minor child, Avah L. The respondent has not appealed from the trial court's judgment with respect to Avah. The parental rights of the respondent father were terminated only as to Avah. Because the father has not appealed from that judgment, we refer in this opinion to Britney N. as the respondent.

[2] The respondent also claims, on appeal, that the trial court abused its discretion in amending the termination of parental rights petition as to Lilyana to include § 17a-112 (j) (3) (C) as a basis for the termination of parental rights, and that the trial court erred when it determined, pursuant to that ground, that Lilyana had been denied, by reason of an act of commission or omission by the respondent, the care, guidance, or control necessary for the child's physical, educational, moral, or emotional well-being. The petitioner needed to prove only one of the grounds in § 17a-112 (j) (3) by

clear and convincing evidence for the trial court to terminate the respondent's parental rights as to Lilyana. *See In re Egypt E.*, 327 Conn. 506, 526, 175 A.3d 21, cert. denied sub nom. *Morsy E.* v. *Commissioner of Children & Families* (U.S. October 1, 2018) (No. 17-1549). This court's holding that the trial court correctly determined that the petitioner satisfied § 17a-112 (j) (3) (F) as to the respondent is sufficient to uphold the termination of the respondent's parental rights as to Lilyana. We, therefore, decline to review the respondent's additional claims with regard to § 17a-112 (j) (3) (C).

[3] The respondent has a third minor child, Amelia B., whose father is Ruben B. Amelia lives with Ruben, and neither was involved in the underlying petitions.

[4] Avah's father, William L., was also named in the petition as to Avah, and his parental rights as to Avah ultimately were terminated. William's parental rights were not terminated as to Lilyana because, on May 18, 2017, the trial court found that William was not Lilyana's biological father.

[5] The following physicians testified on behalf of the petitioner: Erin Bowen, Avah's pediatrician; Pavlovic, the pediatrician and child abuse expert at Yale New Haven Children's Hospital; Brendon Graeber, an expert in pediatric radiology; Michael L. DiLuna, chief of pediatric neurosurgery at Yale New Haven Hospital; Brian Smith, a pediatric orthopedic surgeon at Yale New Haven Hospital; and Kathleen Stoessel, an ophthalmologist at Yale New Haven Hospital.

[6] The trial court explained that it did not find Scheller and Levenbrown's testimony persuasive because they "never examined Avah, never consulted with the treating physicians, and never interviewed the respondent [or William] regarding Avah's injuries." The trial court went on to find: "[Scheller and Levenbrown] presented a piecemeal analysis of Avah's injuries that supported an agenda rather than a credible assessment of the totality of Avah's injuries. The more credible testimony presented at trial was by Dr. Bowen, Dr. Pavlovic, Dr. DiLuna, Dr. Stoessel, Dr. Smith and Dr. Graeber."

[7] William was incarcerated during this time, and his phone conversations were recorded by the Department of Correction.

———————————————————