******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE TRESIN J.*
(AC 41829)

DiPentima, C. J., and Alvord and Beach, Js.

*Syllabus*

The respondent father appealed to this court from the judgment of the trial
court terminating his parental rights with respect to his minor child.
The trial court had determined, pursuant to statute (§ 17a-112 [j] [3]
[D]), that the father had no ongoing parent-child relationship with the
child. The father, who had last spoken to the child when the child was
less than two years old, was incarcerated for the next three years,
after which the child was placed into the custody of the petitioner, the
Commissioner of Children and Families. The trial court determined that
the child did not know who his father was and had no positive parental
memories of him. On appeal, the father claimed that the trial court
improperly determined that he had no ongoing parent-child relationship
with the child. He alleged that the petitioner had interfered with his
relationship with the child by, inter alia, failing to allow him any contact
with the child despite his requests for phone calls while he was incarcer-
ated. *Held* that the trial court properly applied the law, and its legal
conclusion that the petitioner established the elements of § 17a-112 (j)
(3) (D) was supported by clear and convincing evidence; the respondent
father presented no evidence that he sought visitation with or attempted
to call the child during the three years that he was incarcerated, the
petitioner presented undisputed evidence that when the child was placed
into the petitioner's custody and before any alleged interference took
place, the child did not know who the father was, and, thus, the father
did not present evidence that the petitioner's alleged interference led
to the lack of an ongoing parent-child relationship between him and the
child, and there was no legal support for the father's contention that
the court should have considered his feelings toward the child when
he was incarcerated and the child was less than two years old, as it
was the age of the child when the alleged interference began that was
significant, and that alleged interference did not begin until the child
was five years old.

Argued January 2—officially released February 6, 2019**

*Procedural History*

Petition by the Commissioner of Children and Fami-
lies to terminate the respondents' parental rights with
respect to their minor child, brought to the Superior
Court in the judicial district of Hartford, Juvenile Mat-
ters, and tried to the court, *C. Taylor, J.*; judgment
terminating the respondents' parental rights, from
which the respondent father appealed to this court.
*Affirmed.*

*David J. Reich*, for the appellant (respondent father).

*Hannah F. Kalichman*, certified legal intern, with
whom were *Benjamin Zivyon*, assistant attorney gen-
eral, and, on the brief, *Michael J. Besso*, assistant attor-
ney general, and *George Jepsen*, former attorney
general, for the appellee (petitioner).

*Opinion*

ALVORD, J. The respondent father, Aceion B., appeals from the judgment of the trial court terminating his parental rights with respect to his minor child, Tresin J.[1] On appeal, the respondent claims that the trial court erred when it determined, pursuant to General Statutes § 17a-112 (j) (3) (D), that no ongoing parent-child relationship exists between the respondent and Tresin. We affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to our resolution of the respondent's claim. Tresin was born in June, 2011. The respondent last spoke to Tresin in April, 2013, when Tresin was less than two years old. In May, 2013, the respondent was convicted of possession of marijuana, his probation was revoked,[2] and he was sentenced to a term of incarceration. The respondent subsequently was taken into custody by federal authorities and detained for immigration violations. The respondent remained in federal custody until the fall of 2017.

In July, 2016, the petitioner, the Commissioner of Children and Families, filed a neglect petition with respect to Tresin and his two half-siblings, who were in the care of Tresin's mother. In addition, the petitioner obtained an order of temporary custody with respect to all three children.

In August, 2017, the petitioner filed a petition to terminate the parental rights of the respondent. The petitioner alleged that, pursuant to § 17a-112 (j) (3) (D), the respondent had no ongoing parent-child relationship with Tresin. The termination of parental rights trial was held on February 5 and March 9, 2018.

In a thoughtful memorandum of decision, issued on May 22, 2018, the court found that the petitioner had proved by clear and convincing evidence that there was no ongoing parent-child relationship with respect to the respondent and Tresin. In reaching its conclusion, the court found that "Tresin does not know who his father is and has no positive parental memories of his biological father."[3] Additional facts and procedural history will be set forth as necessary.

We begin by setting forth the standard of review and legal principles that guide our analysis of the respondent's claim. "Although the trial court's subordinate factual findings are reviewable only for clear error, the court's ultimate conclusion that a ground for termination of parental rights has been proven presents a question of evidentiary sufficiency. . . . That conclusion is drawn from both the court's factual findings and its weighing of the facts in considering whether the statutory ground has been satisfied. . . . On review, we must determine whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumu-

lative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court. . . . To the extent we are required to construe the terms of § 17a-112 (j) (3) [(D)] or its applicability to the facts of this case, however, our review is plenary. . . .

"Proceedings to terminate parental rights are governed by § 17a-112. . . . Under [that provision], a hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more of the . . . grounds for termination of parental rights set forth in § 17a-112 [(j)(3)] exists by clear and convincing evidence. The [petitioner] . . . in petitioning to terminate those rights, must allege and prove one or more of the statutory grounds." (Citation omitted; internal quotation marks omitted.) *In re Lilyana L.*, 186 Conn. App. 96, 104–105,    A.3d    (2018).

The statutory ground set forth in § 17a-112 (j) (3) (D) provides that a trial court may grant a petition for termination of parental rights if it finds by clear and convincing evidence that "there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . . ."

"Because [t]he statute's definition of an ongoing parent-child relationship . . . is inherently ambiguous when applied to noncustodial parents who must maintain their relationships with their children through visitation . . . [t]he evidence regarding the nature of the respondent's relationship with [the] child at the time of the termination hearing must be reviewed in the light of the circumstances under which visitation has been permitted. . . .

"In determining whether such a relationship exists, generally, the ultimate question is whether the child has no present [positive] memories or feelings for the natural parent." (Internal quotation marks omitted.) *In re Jacob W.*, 178 Conn. App. 195, 208, 172 A.3d 1274 (2017), cert. granted on other grounds, 328 Conn. 902, 177 A.3d 563 (2018).

On appeal, the respondent claims that the trial court erred when it determined, pursuant to § 17a-112 (j) (3) (D), that no ongoing parent-child relationship exists between the respondent and Tresin. Specifically, the respondent argues that the court failed to apply the law set forth in this court's decision in *In re Carla C.*, 167 Conn. App. 248, 143 A.3d 677 (2016).[4] He argues that,

in accordance with *In re Carla C.*, the trial court should have considered (1) the petitioner's interference with the development of the parent-child relationship between himself and Tresin, and (2) Tresin's young age, in light of which the respondent's feelings toward Tresin are significant. We disagree.

The trial court did consider this court's decision in *In re Carla C.* During closing arguments, the court, sua sponte, raised the question of whether the guidance set forth in *In re Carla C.* applied to the circumstances of the present case. The petitioner argued that *In re Carla C.* did not apply because neither a parent nor the petitioner had interfered with the respondent's relationship with Tresin.[5] The respondent, in his subsequent closing argument, did not indicate any disagreement with the petitioner's argument with respect to the inapplicability of *In re Carla C.*

The facts in the present case are not aligned with the facts of *In re Carla C.* In *In re Carla C.*, supra, 167 Conn. App. 251–52, the respondent was arrested and incarcerated when his child was less than one month old. On at least ten different occasions, the child's mother, the petitioner, took the child to visit the respondent in prison. Beginning when the child was two years old, however, the petitioner began limiting the respondent's access to the child by refusing to facilitate visits or permit other contact.[6] Id., 273. She then filed a petition to terminate the respondent's parental rights on the basis of no ongoing parent-child relationship. On appeal, this court concluded that "the petitioner may not establish the lack of an ongoing parent-child relationship on the basis of her own interference with the respondent's efforts to maintain contact with [the child] . . . ." Id., 280–81.

In the present case, the respondent claims that, as in *In re Carla C.*, the petitioner interfered with his relationship with Tresin. He argues that "[the petitioner] failed to allow any contact between [the respondent] and Tresin, despite the fact that [the respondent] requested phone calls when he was incarcerated . . . . The written record shows that [the respondent] reached out to [the petitioner] and requested possible phone calls with the child and expressed his hope that a paternal relative could care for the child."[7]

First, we note that Tresin was not placed in the custody of the petitioner until July, 2016.[8] As previously stated, the respondent last had contact with Tresin in April, 2013, before he was incarcerated. Accordingly, the respondent was incarcerated for more than three years, from April, 2013 to July, 2016, before Tresin was placed into the petitioner's custody. The respondent presented no evidence that he sought visitation or attempted to call Tresin during those three years. The respondent does not allege any interference by the child's mother, who had custody of Tresin during

that time.

Moreover, the petitioner presented undisputed evidence that, in July, 2016, when Tresin was placed into the petitioner's custody and before any alleged interference took place, Tresin did not know who his father was. Therefore, unlike in *In re Carla C.*, the respondent did not present evidence that the petitioner's alleged interference *led to* the lack of an ongoing parent-child relationship between the respondent and Tresin.[9]

The respondent also argues that, in accordance with *In re Carla C.*, the trial court should have taken into consideration his positive feelings toward Tresin because Tresin was less than two years old when the respondent was incarcerated. This court, however, in *In re Carla C.*, did not look to the child's age at the time that the respondent was incarcerated. Rather, the age of the child when the petitioner began interfering was significant. This court noted that "[the child] was . . . *only two years old* when the petitioner began denying the respondent visitation and otherwise severed contact," and determined that, "[i]n light of the petitioner's denial of visitation beginning when [the child] was still *in the earliest stages of life*, [this court] also must be mindful of the positive feelings of the respondent toward the child." (Emphasis added; internal quotation marks omitted.) *In re Carla C.*, supra, 167 Conn. App. 274.

In the present case, the petitioner's alleged interference did not begin until, at the earliest, July, 2016,[10] when Tresin was five years old. Therefore, *In re Carla C.* is markedly distinct from the present case, and there is no legal support for the respondent's contention that the court should have considered the respondent's positive feelings toward Tresin. See id., 266 ("[w]e recognize that the child's positive feelings for the noncustodial parent generally are determinative . . . except where the child is *too young to have any discernible feelings*" [citation omitted; emphasis added]); see also *In re Valerie D.*, 223 Conn. 492, 532, 613 A.2d 748 (1992) ("where the child involved is *virtually a newborn infant* whose present feelings can hardly be discerned with any reasonable degree of confidence . . . the inquiry must focus, not on the feelings of the infant, but on the positive feelings of the natural parent" [emphasis added]).

On the basis of the foregoing, we conclude that the trial court properly applied the law, and that its legal conclusion that the petitioner established the elements of § 17a-112 (j) (3) (D) is supported by clear and convincing evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open

for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** February 6, 2019, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The parental rights of Tresin's mother also were terminated, and she has not appealed.

[2] The respondent previously had been convicted of drug related offenses. In 2008, the respondent was convicted of possession of marijuana, and in 2011, he was convicted of possession of marijuana with intent to sell.

[3] The court also determined that it would be detrimental to Tresin's best interests to allow further time for a relationship with the respondent to develop. The respondent does not challenge this determination.

[4] In *In re Carla C.*, supra, 167 Conn. App. 272, this court recognized that there are "two relevant variables on which the inquiry into whether an ongoing parent-child relationship exists may turn: (1) a child's very young age, in light of which the parent's positive feelings toward the child are significant; and (2) another party's interference with the development of the relationship, in light of which the parent's efforts to maintain a relationship, even if unsuccessful, may demonstrate positive feelings toward the child."

[5] The trial court and the petitioner's counsel engaged in the following colloquy:

"The Court: . . . I seem to recall *In re Carla C.* and Judge Mullins—now Justice Mullins'—position concerning that similar type of argument. How do you separate that case from this one?

"[The Petitioner's Counsel]: Well, Your Honor . . . while the child [is] alive . . . [the respondent's] already on probation. He goes out and continues the same activity. It's not the mere fact that he's incarcerated and kept away from Tresin. That's not what in of itself matters. *And it's not as if someone from outside were—a parent, a grandparent, another parent, for example—were attempting to keep him. It's his own actions in this case. So, it's not as if he didn't have this relationship because [the petitioner] removed the child from him. It's not as if it was an outside state agency or a parent who created the conditions of interference.*" (Emphasis added.)

[6] The petitioner stopped taking the child to visit the respondent because she "unilaterally decided that visits with the respondent were no longer in [the child's] best interest." *In re Carla C.*, supra, 167 Conn. App. 252. The petitioner "obtained an order from the correctional facility that barred the respondent from initiating any contact with her or [the child], on pain of disciplinary action. Subsequently, she sought and obtained sole custody of [the child], stipulating that the respondent would have bimonthly visits with [the child] at the prison. She nevertheless neither facilitated those visits nor moved to modify visitation. Additionally, the petitioner has not told [the child] that the respondent is her father or shown her pictures of the respondent; indeed, she has discarded the respondent's cards and letters to [the child]. Short of 'extraordinary and heroic efforts' by the respondent . . . the petitioner was able completely to deny him access to [the child]." (Citation omitted; footnote omitted.) Id., 273.

[7] The respondent also argues that the petitioner interfered with his relationship with Tresin because "[o]nce he was released, he requested visits through counsel, which [were] effectively opposed by [the petitioner]." The respondent, however, did not file the requests for visitation until November, 2017. The petition for termination of parental rights was filed in August, 2017, three months earlier. Practice Book § 35a-7 (a) provides in relevant part: "In the adjudicatory phase, the judicial authority is limited to evidence of events preceding the filing of the petition . . . ." Accordingly, because the court could not have considered the respondent's belated requests for visitation in its analysis of whether there was an ongoing parent-child relationship between the respondent and Tresin, any alleged interference with respect to those requests similarly was irrelevant to the court's analysis.

[8] On July 11, 2016, the petitioner was granted temporary custody of Tresin. Accordingly, any alleged interference by the petitioner, as Tresin's custodian, could only have occurred after that date.

[9] See *In re Carla C.*, supra, 167 Conn. App. 262 ("a parent whose conduct inevitably has led to the lack of an ongoing parent-child relationship may not terminate parental rights on this ground"); see also *In re Jacob W.*, supra, 178 Conn. App. 215 ("interference exists only if a custodian's unreasonable interference with a noncustodial parent's efforts to maintain an ongoing parent-child relationship leads inevitably to the lack of such relationship").

[10] See footnote 8 of this opinion.